**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**REBECCA MULLIS,**
**individually and on behalf of a class**
**of similarly situated persons,**

      **Plaintiff,**

**v.**                                      **Civil Action No.: 5:12-cv-03158**
                                                 **Honorable David A. Faber**

**MOUNTAIN STATE UNIVERSITY, INC.,**

      **Defendant.**

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Rebecca Mullis, individually and on behalf of a class of similarly situated persons, by and through her attorneys, The Bell Law Firm, PLLC and The Googasian Firm, P.C., alleges as follows for her Amended Class Action Complaint:

### Nature of Action

1.    This is a class action seeking damages and other remedies for Plaintiff and a class of similarly situated individuals who enrolled in online Diagnostic Medical Sonography ("DMS") educational programs through Mountain State University, Inc. ("Mountain State") seeking certificates, associate degrees, or bachelor degrees.  Plaintiff seeks damages for herself and all Class Members for breach of contract and other claims as a result of Mountain State's failure to fulfill its obligations to provide sites for clinical externships required to complete the DMS program, among other failures.

2.    As a result of Mountain State's breaches of its obligations, the time and money invested by Plaintiff and other Class Members has been wasted because the students cannot

complete their programs and obtain the credentials toward which they have been working and paying tuition.

## Parties, Jurisdiction and Venue

3.     At all relevant times, Plaintiff Rebecca Mullis was a resident of Leesburg, Florida.

4.     At all relevant times, Defendant Mountain State University, Inc. was a West Virginia corporation with its principal place of business in Beckley, West Virginia.

5.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d).

6.     Venue exists pursuant to 28 U.S.C. § 1391(a).

7.     The amount in controversy for each Plaintiff and class representative exceeds $75,000, exclusive of interest and costs.

8.     The amount in controversy exceeds $5,000,000, exclusive of interest and costs.

## Class Action Allegations

9.     Plaintiff hereby incorporates by reference the preceding allegations.

10.    Mountain State is a private university located in West Virginia.

11.    Mountain State recently began offering an "online DMS program" and enrolling students from around the country in that program.

12.    Plaintiff Rebecca Mullis enrolled in the online DMS program in or about 2008.

13.    In order to comply with accrediting requirements, the DMS program requires students to complete a clinical externship.

14.    At the time that Plaintiff Mullis enrolled and at all relevant times, Mountain State

2

was aware that a major portion of each student's education and training would be conducted in a clinical externship, where the student would gain hands-on experience performing sonography at a clinical site.

15.     At all relevant times, Mountain State was aware that completion of a clinical externship was necessary for students to complete the program and in order for students to become licensed to practice DMS.

16.     Prior to enrolling Plaintiff Mullis, Mountain State assured her that it had a clinical externship location in her area.

17.     Mountain State did not have a clinical externship location in Plaintiff Mullis's area.

18.     Mountain State never located an externship location for Plaintiff Mullis that would enable her to complete her program and receive the training and credential toward which she had been working and paying tuition.

19.     Plaintiff Mullis has incurred approximately $60,000 in student loan debt in connection with pursuing her DMS credential from Mountain State.

20.     Like Plaintiff Mullis, each Class Member was prevented from completing the online DMS program because Mountain State did not provide clinical externship locations.

21.     Plaintiff Mullis brings this lawsuit as a class action pursuant to Federal Rules of Civil Procedure, Rules 23(b)(2) and (3), on behalf of a Class defined as:

> All individuals who enrolled in an online Medical Diagnostic Sonography program at Mountain State University at any time from the program's inception in 2007 to the present, for whom Mountain State provided no clinical externship site within three hours of the student's home or another practicable location in the student's area.

3

22.    Class Members each paid a substantial amount of money for programs of study at Mountain State in and in preparation for the DMS program.

23.    Mountain State currently charges $495 per credit hour for the online DMS program, excluding fees.

24.    The online bachelor degree DMS program currently requires completion of 138 credits, for a total tuition of $68,310, exclusive of any prerequisites.

25.    The online associate degree DMS program currently requires completion of 104 credits, for a total tuition of $51,480, exclusive of any prerequisites.

26.    The Class includes all students who, like Plaintiff Mullis, enrolled in an online DMS program at Mountain State at any time from the inception of the online programs in 2007 to the present.

27.    On information and belief, the Class includes hundreds of similarly situated persons in states outside West Virginia who enrolled in the DMS program but for whom no practicable clinical externship site was provided by Mountain State.

28.    The Class is so numerous that joinder of all members is impracticable.

29.    There are questions of law or fact common to the members of the Class that predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

30.    The claims of Plaintiff Mullis are typical of the claims of the other members of the Class.

31.    Plaintiff Mullis will fairly and adequately assert and protect the interests of the

4

Class.

32.     The maintenance of the action as a class action will be superior to other available methods of adjudication in promoting the convenient administration of justice.

33.     Mountain State has acted and refused to act on grounds that apply generally to the class, so that final injunctive or declaratory relief is appropriate regarding the class as a whole.

## General Allegations regarding Mountain State

34.     Plaintiff incorporates by reference the preceding allegations.

35.     Mountain State is a private school that has been located in West Virginia since its founding in 1933.

36.     Mountain State was originally named "Beckley College" at the time of its founding, and became known as Mountain State University in 2001.

37.     Mountain State's main campus is located in Beckley, West Virginia.

38.     Mountain State's official website is located at www.mountainstate.edu.

39.     Mountain State was traditionally a campus-based college where students were required to attend classes in person.

40.     Beginning in about 1990, in an effort to increase tuition revenue, Mountain State began an expansion that included several different campuses in different states as well as online offerings.

41.     Mountain State opened physical campuses in Florida, North Carolina, and Pennsylvania.

42.     Mountain State's expansion to increase tuition revenues came at the expense of quality and compliance with accreditation standards.

5

43.     Mountain State was unprepared for the rigors of offering online programs that involved clinical obligations.

44.     After years of expansion, Mountain State has faced increasing accreditation problems in recent years.

45.     In 2010, Mountain State lost national accreditation for its nursing program.

46.     In 2012, Mountain State lost accreditation from the State of West Virginia for its nursing program.

47.     In 2012, Mountain State's Diagnostic Medical Sonography program was placed on probation.

48.     Mountain State's long-time President Charles H. Polk, was one of the highest paid college presidents in the country, with a salary that accounted for approximately 3.5% of Mountain State's total expenditures during 2009.

49.     In 2012, Mountain State's long-time President, Charles H. Polk was fired.

### Mountain State's Diagnostic Medical Sonography Program

50.     Plaintiff incorporates by reference the preceding allegations.

51.     Diagnostic Medical Sonography, referred to throughout the Amended Class Action Complaint as "DMS," involves the use of sound waves or ultrasound to create images of internal structures of the human body for medical purposes.

52.     Mountain State began offering instruction in DMS programs in or about 1994 at its Beckley, West Virginia campus.

53.     The DMS programs consisted of classroom instruction and a required clinical component.

6

54.     The required clinical component consisted of an externship where students would practice and hone their ultrasound skills in a hospital or clinical setting.

55.     Traditionally, for its on-campus students, Mountain State provided clinical training at a lab located on site, and externships at a local medical facility.

56.     In or about 2007, in an effort to increase enrollment and tuition paid to the school, Mountain State began offering an online DMS program to students who did not live near or attend classes at its Beckley, West Virginia campus with its available lab and externship facility.

57.     The online Associate of Science and Bachelor of Science degree programs initially admitted students living 100 miles outside the Beckley and Martinsburg campuses.

58.     At or about the time the online DMS programs were first offered, Mountain State's website proclaimed the DMS "Now Online!"

59.     Mountain State promoted the online DMS programs as: "The nation's only truly online DMS program!"

60.     Mountain State's website stated: "The online DMS program is offered nationwide and is designed to keep the student as close to home as possible. Clinical rotations are intended to be offered at a clinical setting (hospital/clinic) as close to the student's geographical locations as possible."

61.     Mountain State's website stated: "Why Choose MSU? MSU offers a **true online program**, the first in the country! Students are not required to spend anytime on a traditional campus and in-state tuition is the same as out-of-state tuition."

62.     Mountain State's website stated: "Although the online program is new, MSU has offered the traditional associate degree and certificate program since 1993 and bachelor's degree

7

program since 1995. Our graduates work all over the country and we have current clinical affiliations with hospitals throughout the United States."

63.    Mountain State held itself out as offering nationwide clinical sites at "hospitals throughout the United States."

64.    Mountain State represented to prospective students on its website that Mountain State "ha[d] clinical current clinical affiliations with hospitals all over the United States."

65.    Mountain State sought and encouraged students from outside West Virginia to apply to the school and participate in an online curriculum assuring students that it had clinical sites across the country at which students could complete the clinical training necessary to fulfill the requirements of the program and to gain licensure.

66.    Mountain State was aware that a major portion of each student's education and training would be conducted in a clinical externship, where the student would gain hands-on experience performing sonography at a clinical site.

67.    Mountain State was aware that participation in a clinical externship at a clinical site was necessary in order to meet accrediting requirements.

68.    Mountain State was aware that participation in a clinical externship at a clinical site was necessary in order for students to complete the program in compliance with accrediting and licensure requirements.

69.    Mountain State advertised to prospective students living outside West Virginia that Mountain State had numerous clinical sites around the country at which the students could complete their clinical externships.

70.    Despite repeated representations that it had numerous clinical sites around the

8

country at which students in online programs living outside West Virginia could complete their clinical externships, Mountain State did not have clinical sites for students outside West Virginia.

72.     Mountain State promised that it would "make every attempt to place [the student] within a clinical facility within [the student's] area."

72.     Upon information and belief, Mountain State did not make every attempt to place students within clinical facilities within the student's area.

**Class Members From Around the Country Enroll In the Online DMS Program**

73.     Plaintiff incorporates by reference the preceding allegations.

74.     Class Member Kendall Campbell enrolled in the online DMS program in or about 2009.

75.     At the time she enrolled, Ms. Campbell was a resident of Louisville, Kentucky.

76.     During the program, Ms. Campbell moved from Louisville to New Braunfels, Texas, near San Antonio.

77.     Prior to relocating to the San Antonio area, Ms. Campbell was assured by Mountain State that it would provide a location for a clinical externship in the San Antonio area at which she could complete the required clinical externship.

78.     Mountain State did not have and did not provide Ms. Campbell a location for a clinical externship in the San Antonio area.

79.     Mountain State assigned Ms. Campbell to a clinical externship location in Low Moor, Virginia.

80.     Low Moor, Virginia is approximately 1,500 miles from Ms. Campbell's Texas

9

home.

81.     Ms. Campbell could not commute 3000 miles per day to attend a clinical externship.

82.     Mountain State did not provide Ms. Campbell with an externship location closer to her home.

83.     Ms. Campbell was unable to attend the clinical externship at the location in Virginia.

84.     Ms. Campbell was unable to complete her online DMS program or obtain licensure due to Mountain State's failure to provide a clinical externship site.

85.     Class Member Devonia Hughes enrolled in the online DMS program in or about 2008.

86.     Prior to enrolling Ms. Hughes, Mountain State assured her that it had a clinical externship location in her area in New Jersey.

87.     At the time Ms. Hughes was eligible for her clinical externship, Mountain State did not have an externship location in her area.

88.     Mountain State assigned Ms. Hughes to an externship location more than three hours from her home.

89.     Ms. Hughes could not participate in an externship that required more than six hours of round-trip driving each day.

90.     Mountain State did not provide Ms. Hughes with an externship location closer to her home.

91.     Ms. Hughes was unable to complete her online DMS program or obtain licensure

10

due to Mountain State's failure to provide a clinical externship site.

92.     At all relevant times, Class Member April Santiago was a resident of Tacoma, Washington.

93.     Ms. Santiago enrolled in Mountain State's online DMS program in or about 2007.

94.     Mountain State did not provide Ms. Santiago with a clinical externship location in her area.

95.     Mountain State assigned Ms. Santiago to a clinical externship location in Springfield, Oregon, a four hour drive from her home.

96.     Ms. Santiago could not participate in an externship that required eight hours of round-trip driving each day.

97.     Ms. Santiago was unable to complete her online DMS program or obtain licensure due to Mountain State's failure to provide a clinical externship site.

**Mountain State's Accrediting Agency Places DMS Program Accreditation on Probation**

98.     Plaintiff hereby incorporates by reference the preceding allegations.

99.     Mountain State's Associate Degree DMS program is accredited by the Commission on Accreditation of Allied Health Education Programs (CAAHEP).

100.    In 2012, Mountain State advised students that the associate degree DMS program had been placed on probation by CAAHEP following a site visit in June 2011.

101.    According to Mountain State, "Probation is a temporary status of accreditation for programs that are not currently in substantial compliance with the accreditation standards but are expected to be able to meet them within a specific time."

102.     CAAHEP determined that Mountain State is not in substantial compliance with

11

CAAHEP standards for the "number of clinical sites affiliated with the program" and the qualifications of Atwo online clinical coordinators."

103.    CAAHEP determined that Mountain State's DMS program is not in substantial compliance with CAAHEP's "fair practices," including that "the new travel policy is in place and is being followed."

104.    On information and belief, the deficiencies identified by CAAHEP, Mountain State's DMS accrediting agency, relate directly to the online DMS program and the lack of clinical sites for students to complete required externships.

105.    On June 28, 2012, Higher Learning Commission took action to withdraw Mountain State's accreditation.

106.    Among the reasons cited by the Higher Learning Commission for Mountain State's loss of accreditation were "serious quality issues identified [by CAAHEP]" in the DMS program, including, on information and belief, Mountain State's failure to provide clinical sites for required externships.

## Count I
## Breach of Contract

107.    Plaintiff hereby incorporates by reference the preceding allegations.

108.    Mountain State entered into express or implied contracts with Plaintiff Mullis and each Class Member under which it agreed to provide education and training to Class Members to permit them to complete the online DMS program, including that Mountain State had numerous locations around the country and in each student's area where approved clinical externships would be offered.

109.    Mountain State breached its obligations under these contracts because Mountain State failed to provide locations for clinical externships at locations around the country and in each student's area.

110.    Mountain State failed to provide numerous students any clinical site for a clinical externship at all.

111.    Plaintiff Mullis and Class Members have been damaged as a proximate result of these breaches by Mountain State because, among other reasons, Class Members have not been able to complete their programs due to lack of clinical sites for externships.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and in favor of all Class Members, and against Mountain State, for whatever damages Plaintiff and the Class Members are found to be entitled to recover, plus interest, costs and attorney's fees, including, but not limited to, direct damages, incidental damages, consequential damages, exemplary damages, punitive damages, injunctive relief and any other or further relief the Court deems just.

## Count II
## Negligence

112.    Plaintiff hereby incorporates by reference the preceding allegations.

113.    Mountain State owed Plaintiff Mullis a duty of due care in all aspects of the operation of the school and the online DMS program that affected her enrollment, education, and program completion.

114.    The duty of due care owed by Mountain State extended to Plaintiff Mullis and all Class Members.

115.    Mountain State breached its duty of due care to Plaintiff Mullis and all Class Members in numerous ways, including but not limited to, by representing that Mountain State had clinical sites around the country when it did not, enrolling Plaintiff and other Class Members without adequate clinical sites, and by failing to provide locations for clinical externships for students enrolled in the online DMS program.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and in favor of all Class Members, and against Mountain State, for whatever damages Plaintiff and other Class Members are found to be entitled to recover, plus interest, costs and attorney's fees, including, but not limited to, direct damages, incidental damages, consequential damages, exemplary damages, punitive damages, injunctive relief and any other or further relief the Court deems just.

### Count III
### Negligent Misrepresentation

116.    Plaintiff hereby incorporates by reference the preceding allegations.

117.    Mountain State made one or more innocent, negligent, or reckless omissions of fact, including but not limited to, representing that locations for externships were available throughout the country, locations for externships would be provided in the students' area, Mountain State would make every effort to provide clinical locations for students, externships would be offered at clinical locations that would make it practicable for online students to complete the clinical requirements, and by failing to disclose that externships would not be offered as represented making it impossible for the students to complete their programs.

14

118.     Plaintiff Mullis and other Class Members detrimentally relied on one or more statements of fact and omissions of fact made by Mountain State by enrolling in Mountain State and completing classes in and in preparation for the online DMS program, continuing the online DMS program, expending time and effort and incurring tuition in an effort to complete the online DMS program.

119.     Plaintiff Mullis and other Class Members suffered injury as a result of their reliance on the misrepresentations and omissions by Mountain State.

120.     The justifiable reliance by Plaintiff Mullis and other Class Members was such that the injury they suffered inured to the benefit of Mountain State.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and in favor of all Class Members, and against Mountain State, for whatever damages Plaintiff and other Class Members are found to be entitled to recover, plus interest, costs and attorney's fees, including, but not limited to, direct damages, incidental damages, consequential damages, exemplary damages, punitive damages, injunctive relief and any other or further relief the Court deems just.

**Count IV**
**Unjust Enrichment/Breach of Quasi-Contract**

121.     Plaintiff hereby incorporates by reference the preceding allegations.

122.     Mountain State has received benefits from Plaintiff Mullis and other Class Members in the form of tuition and fees, among other benefits.

123.     It is inequitable to allow Mountain State to retain these benefits granted to them

15

by Plaintiff Mullis and other Class Members.

   **WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and in favor of all Class Members, and against Mountain State, for whatever damages Plaintiff and other Class Members are found to be entitled to recover, plus interest, costs and attorney's fees, including, but not limited to, direct damages, incidental damages, consequential damages, exemplary damages, punitive damages, injunctive relief and any other or further relief the Court deems just.

### Count V
### West Virginia Consumer Credit and Protection Act

   124.   Plaintiff hereby incorporates by reference the preceding allegations.

   125.   Plaintiff and Class Members are persons who can assert claims pursuant to the West Virginia Consumer Credit and Protection Act, W.Va. Code § 46A-6-101, *et seq*.

   126.   Plaintiff and Class Members enrolled in Mountain State's online DMS program for their own personal betterment.

   127.   At all relevant times, Mountain State had a legal duty to comply with the West Virginia Consumer Credit and Protection Act.

   128.   Mountain State violated the West Virginia Consumer Credit and Protection Act.

   129.   Plaintiff and other Class Members suffered a loss as a result of Mountain State's violations of this act.

   130.   Plaintiff has complied with the requirements of W.Va. Code 46A-6-106(b) by providing Mountain State with an opportunity to make a cure offer.

16

131.    Mountain State engaged in unfair, unconscionable, and deceptive methods, acts or practices with regard to the marketing of the educational programs it offered including, but not limited to:

a.    Representing that Mountain State's online DMS program had clinical externship sites around the country at which Plaintiff Mullis and other Class Members could practicably complete their clinical requirements when the clinical externship sites did not exist;

b.    Failing to reveal one or more material facts, the omission of which tended to mislead or deceive Plaintiffs, and the fact could not reasonably be known by Plaintiff Mullis and other Class Members, including, but not limited to, that Mountain State did not have clinical externship sites around the country and in locations where Plaintiff Mullis and other Class Members could practicably complete their clinical requirements and that Mountain State would not actually make every effort to obtain clinical sites;

c.    The use of deception, misrepresentation and concealment relating to the availability of clinical externship sites and/or that Mountain State would make every effort to obtain clinical externship sites;

d.    Making a representation of fact or statement of fact material to the transaction such that Plaintiff Mullis and other Class Members reasonably believed the represented or suggested state of affairs to be other than it actually was;

e.    Otherwise engaging in conduct which similarly creates a likelihood of confusion or misunderstanding with respect to the services and education offered; and

f.    Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

132.    As a direct and proximate result of Mountain State's violations of the West Virginia Consumer Credit and Protection Act, Plaintiff Mullis and other Class Members have suffered and will continue to suffer harm, including, but not limited to, the waste and loss of

17

time, money, and effort, of working toward completion of the online DMS program made futile by Mountain State's failure to provide clinical externship opportunities.

**WHEREFORE**, Plaintiff requests that this Court enter judgment in her favor and in favor of all Class Members, and against Mountain State for whatever damages Plaintiff and other Class Members are found to be entitled to recover, plus interest, costs and attorney's fees, including, but not limited to, direct damages, incidental damages, consequential damages, exemplary damages, punitive damages, injunctive relief and any other or further relief the Court deems just.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS.**

Respectfully submitted,

**REBECCA MULLIS,
individually and on behalf of a class
of similarly situated persons,**

**By counsel,**

/s/Harry F. Bell, Jr.
Harry F. Bell, Jr. (W.Va. Bar No. 297)
Jonathan W. Price (W.Va. Bar No. 10868)
**THE BELL LAW FIRM, PLLC**
30 Capitol Street
P.O. Box 1723
Charleston, WV 25326-1723
(304) 345-1700
(304) 345-1715 Facsimile
E-mail: hfbell@belllaw.com
        jwprice@belllaw.com

**THE GOOGASIAN FIRM, P.C.**
Thomas H. Howlett (*Statement of Visiting Attorney duly filed*)

18

Dean M. Googasian (*Statement of Visiting Attorney duly filed*)
6895 Telegraph Road
Bloomfield Hills, MI  48301-3138
E-mail: thowlett@googasian.com
          dgoogasian@googasian.com

Dated: September 17, 2012